**Robert E. HIGGINS, Plaintiff, Appellant,**

v.

**NEW BALANCE ATHLETIC SHOE, INC., Defendant, Appellee.**

No. 99–1043.

United States Court of Appeals, First Circuit.

Heard Aug. 4, 1999.

Decided Oct. 22, 1999.

---

254

John P. Gause, with whom Berman & Simmons, P.A., Burton G. Shiro, and Shiro & Shiro Law Offices were on brief, for appellant.

Bernard J. Kubetz, with whom Thad B. Zmistowski and Eaton, Peabody, Bradford & Veague, P.A. were on brief, for appellee.

Before SELYA, Circuit Judge, CYR, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

Plaintiff-appellant Robert E. Higgins sued his former employer, defendant-appellee New Balance Athletic Shoe, Inc. (New Balance), claiming, inter alia, hostile environment sex discrimination (relating to actions of, and remarks by, his supervisor and co-workers, allegedly on account of his homosexuality), retaliatory discharge (relating to his frequent complaints about activities in the factory that he thought were unsafe or illegal), and disability discrimination (relating to a hearing impairment that impeded his ability to work comfortably in the factory). The district court granted summary judgment in New Balance's favor. *See Higgins v. New Balance Athletic Shoe, Inc.,* 21 F.Supp.2d 66 (D.Me.1998). Higgins appeals. In large part, the arguments that he advances bear only a faint resemblance to the arguments raised below, and there-

fore fail. Higgins's remaining arguments are mostly (but not entirely) unavailing. Thus, we affirm the judgment below in substantial part. Regarding one aspect of Higgins's disability discrimination claim, however, we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

■ We present only the facts necessary to place the appealed claims into proper perspective, referring the reader who hungers for greater detail to the district court's more exegetic account. *See id.* at 69–71. Like the district court, we credit the factual account that the appellant prefers, consistent with record support, and indulge all reasonable inferences favorably to his cause. *See Conward v. Cambridge Sch. Comm.,* 171 F.3d 12, 17 (1st Cir.1999).

For ten years, beginning in 1986, the appellant worked on the production line at New Balance's factory in Norridgewock, Maine. Although he earned generally positive evaluations, he received two warnings in 1995 about his failure to comport himself as a team player. New Balance says that these warnings stemmed from Higgins's disregard of its philosophy that the manufacturing process requires workers to collaborate and communicate with each other. Higgins refused to sign the warnings because he deemed them unjustified.

Apart from job performance, other problems plagued the appellant in the workplace. Apparently due to his homosexuality, many of his fellow workers mistreated him: they called him vulgar and derogatory names, made obscene remarks about his imagined sexual activities, and mocked him (e.g., by using high-pitched voices or gesturing in stereotypically feminine ways).[1] The appellant says that he complained re-

peatedly to persons in authority, but nothing was done to ameliorate the situation. Indeed, Ron Plourde, who eventually became the appellant's supervisor, was one of his foremost tormentors.

A confrontation with yet another tormentor, Melanie Vitalone, precipitated the appellant's discharge. According to the appellant's account, Vitalone not only would ridicule him because of his sexual orientation but also would blame him when her work did not go well. He often griped about Vitalone's predilections, but without result. Indeed, his supervisor (Plourde) told him at one indeterminate point that he would be "out the door" if he complained one more time about Vitalone. On what proved to be the appellant's last day of work (January 4, 1996), Vitalone left the production line to socialize. When she returned, a backlog confronted her. She lashed out at the appellant, mouthing derogatory epithets and blaming him for the back-up. Vitalone called the matter to Plourde's attention, telling him that she had asked Higgins a question and that he had refused to reply. Plourde spoke with both protagonists. Then, citing the personnel reports of Higgins's failed communications, Plourde fired him for insubordination.

Harassment was not the appellant's only bugaboo; he frequently complained about many other conditions and activities in the workplace. He groused, for example, about noxious fumes, misleading product labeling, and substance abuse by factory workers. Of particular interest here, he asserts that he complained that conditions in the factory made it hard for him to do his work because he had a hearing disability. He allegedly asked his superiors to accommodate his impaired hearing by (1)

---

1. Examples of abuse populate the record. One person put a sign on the appellant's desk reading "Blow Jobs 25¢." Others told him that they did not want him near them because of an aversion to his "kind" or because they feared that he would give them AIDS. On various occasions, co-workers squirted him with condiments, snapped rubber bands at him, and poured hot cement on him. One colleague grabbed him from behind in the lavatory and shook him violently. The same person threatened from time to time to kill him.

having a fan installed near his work station (as did other workers) because steam-induced perspiration was ruining his hearing aid, and (2) moving a loudspeaker that exacerbated his difficulty in hearing his co-workers. According to the appellant, New Balance spurned these requests.

## II. DISCUSSION

██ The summary judgment standard requires this court to give the non-movant the benefit of genuinely disputed facts and inferences, but even this latitudinarian approach does not allow the non-movant to switch horses in midstream. Consequently, although the court of appeals affords de novo review to orders granting summary judgment, it will not reverse such an order on the basis of arguments that were not made in the trial court. *See Sammartano v. Palmas del Mar Props., Inc.*, 161 F.3d 96, 97–98 (1st Cir.1998); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir.1995); *Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 609 (1st Cir.1994); *see also United States v. Slade*, 980 F.2d 27, 31 (1st Cir.1992) ("[T]he raise-or-waive rule applies with full force when an appellant tries to present a new theory about why facts previously placed on record are determinative."). With these words of caution, we turn to the three claims that the appellant presses on appeal.

### A. *The Hostile Environment Claim.*

The centerpiece of the appellant's case is his contention that the continual abuse he suffered in the workplace created an actionably hostile environment within the purview of Title VII, 42 U.S.C. §§ 2000e to 2000e–17, and the Maine Human Rights Act (MHRA), Me.Rev.Stat. Ann. tit. 5, §§ 4551–4631.[2] The lower court rejected this claim on the ground that the appellant had shown only harassment because of his

sexual orientation, not harassment because of his sex. *See Higgins*, 21 F.Supp.2d at 75–76. Accordingly, the court did not reach logically subsequent questions such as whether the harassment resulted in a tangible employment action. *See generally Faragher v. City of Boca Raton*, 524 U.S. 775, ——, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, ——, 118 S.Ct. 2257, 2261, 141 L.Ed.2d 633 (1998).

██ The record makes manifest that the appellant toiled in a wretchedly hostile environment. That is not enough, however, to make his employer liable under Title VII: no claim lies unless the employee presents a plausible legal theory, backed by significantly probative evidence, to show, inter alia, that the hostile environment subsisted "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). If the appellant did not frame a trialworthy issue as to this essential element of his claim, Fed.R.Civ.P. 56(c) authorized the entry of summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has made clear in *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) that, in same-sex harassment cases as in all sexual harassment cases, the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations," but in fact constituted discrimination "because of ... sex." *Id.* at ——, 118 S.Ct. at 1002. The statutory "because of ... sex" requirement is not met merely because workplace harassment involves sexual matters: the substance of the violation is *discrimination based on sex* or, as the Court put the matter, "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members

---

**2.** Because courts typically apply Title VII standards to claims of sexual harassment under the MHRA, *see Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 436 n. 3 (1st Cir.1997), and the appellant does not suggest any material differences, we do not discuss the MHRA further in analyzing this claim.

of the other sex are not exposed." *Id.* (internal quotation marks omitted).

■ We hold no brief for harassment because of sexual orientation; it is a noxious practice, deserving of censure and opprobrium. But we are called upon here to construe a statute as glossed by the Supreme Court, not to make a moral judgment—and we regard it as settled law that, as drafted and authoritatively construed, Title VII does not proscribe harassment simply because of sexual orientation. *See Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 751–52 & n. 3 (4th Cir.1996); *Williamson v. A.G. Edwards & Sons,* 876 F.2d 69, 70 (8th Cir. 1989). The appellant argued below for a contrary rule, but the court correctly rejected his importunings. *See Higgins,* 21 F.Supp.2d at 73–74, 76. To that extent, summary judgment plainly was appropriate.

On appeal, Higgins recasts his argument and presents two additional theories suggesting why the hostile environment that pervaded New Balance's factory was "because of . . . sex," and thus actionable under Title VII. His first, a "sex-plus" theory, posits that the employer discriminated against men—and only men—who possessed certain qualities. Eminent authority indicates that such a course of action, if proven, may constitute discrimination "because of . . . sex." *See Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) (per curiam) (reversing summary judgment and holding that an employer may have violated Title VII by treating women with pre-school-age children differently than men with children

of the same age). Riding this horse for all it is worth, the appellant identifies the culpable trait—for which men were punished but women were not—as either a sexual attraction to men or, alternatively, homosexuality.

The appellant's second theory derives from *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), in which the Court ruled that an individual who suffered adverse employment consequences because she did not match the social stereotypes associated with her protected group had an actionable claim under Title VII.[3] *See id.* at 250–52, 109 S.Ct. 1775 (plurality op.); *id.* at 272–73, 109 S.Ct. 1775 (O'Connor, J., concurring). Following this lead, the appellant points to evidence that his peers mocked him by speaking in high-pitched voices and mimicking feminine movements. From these circumstances, he asseverates that he was harassed because he failed to meet his co-workers' stereotyped standards of masculinity and that, therefore, he was harassed "because of . . . sex."

■ Both of these initiatives lack focused factual development in the summary judgment record. We need not probe this point too deeply, however, for—absent exceptional circumstances, not present here—we consider on appeal only arguments that were before the *nisi prius* court. *See Muniz–Cabrero,* 23 F.3d at 609 ("A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If [he] does not do so, and loses the motion, [he]

---

**3.** The Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991), overruled that part of *Price Waterhouse* in which the Court held that an employer could avoid liability for intentional discrimination in "mixed motive" cases if it could demonstrate that the same action would have ensued in the absence of the discriminatory motive. *See* 42 U.S.C. § 2000e–2(m), as added by the Civil Rights Act of 1991, § 107(a); 42 U.S.C. § 2000e–5(g)(2)(B), as amended by the Civil Rights Act of 1991, § 107(b). The same legis-

lation altered the remedial effects of parties meeting certain burdens, but not *Price Waterhouse*'s burden-shifting structure itself. *See Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1156 (8th Cir.1999); *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 420 n. 3 (1st Cir.1996) (citing *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir.1995)). Nevertheless, *Price Waterhouse*'s holding anent the role of stereotypes in Title VII remains viable. *See Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 60 n. 14 (1st Cir.1999).

cannot raise such reasons on appeal." (citations and internal quotation marks omitted)); *see also Slade,* 980 F.2d at 30 ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."). The appellant's newfound theories of sex discrimination were not. We explain briefly.

The papers originally presented by Higgins to the trial court did not claim sexual harassment at all. In respect to the hostile environment claim, his complaint cited only the MHRA and averred that his co-workers abused him "because of his sexual preference." The appellant shifted gears somewhat in his memorandum opposing summary judgment (mentioning Title VII as well as cases involving hostile environment sexual harassment), but he continued to attribute the harassment that he had experienced to his sexual preference. As if to drive the point home, he filed a statement of disputed material facts, *see* D. Me. R. 56(c), in which he reasserted that his co-workers knew him to be homosexual and treated him hostilely "as a result." He did not, then or thereafter, attempt to show that the harassment was "because of ... sex" and thus actionable under Title VII.

The appellant later supplemented his summary judgment opposition. In that submission, he collected some precedents regarding claims of same-sex sexual harassment, and his lawyer wrote, conclusorily, that "[s]exual [h]arassment, based upon sexual preference or orientation, creating an objectionable, abusive hostile work environment, perceived so by a reasonable person and the victim, is sex and gender related, and is a violation of Title VII ... as well as of [the MHRA]." Still, the appellant never attempted to explain to the lower court how—apart from sexual preference or orientation—the harassment was "sex and gender related." He made no mention of *Phillips, Price Waterhouse,* or their respective progeny, nor did he

marshal any evidence of abuse "because of ... sex."

Although it is an appellant's duty to order a transcript of any portion of the proceedings below that he wishes the court of appeals to consider, *see* Fed. R.App. P. 10(b)(1), Higgins has not proffered a transcript of the oral arguments on the summary judgment motion. Since we cannot tell from the available record precisely what his counsel may (or may not) have said during that session, we must assume that his counsel's oral presentation tracked his written submissions. *See Campos-Orrego v. Rivera,* 175 F.3d 89, 93 (1st Cir. 1999) ("Parties seeking appellate review must furnish the court with the raw materials necessary to the due performance of the appellate task.").

On this record, we cannot reach the new and different arguments that the appellant attempts to advance on appeal. We have warned that parties who permit their adversaries to configure the summary judgment record place themselves in peril. *See Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991). A party who aspires to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or else forever hold his peace. *See Sammartano,* 161 F.3d at 97–98; *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990 (1st Cir.1988). The district court is free to disregard arguments that are not adequately developed, *see McCoy v. MIT,* 950 F.2d 13, 22 (1st Cir. 1991), and such arguments cannot be resurrected on appeal.

These elementary principles are dispositive here. The appellant's sex-plus claim never surfaced in the district court, and the record contains no proof at all about how women with the "plus" traits that he now says are central to the case were treated at New Balance. Because the district court had before it neither evidence from which it could draw an inference of "sex-plus" harassment nor a

crystallized legal theory that suggested a viable basis for such a cause of action, no impediment existed to *brevis* disposition.

 The appellant's claim of impermissible stereotyping fares no better. Although he now maintains that the evidence of co-workers mocking his supposedly effeminate characteristics supports an argument for harassment based on sexual stereotypes, he presented that evidence to the district court only as an example of discrimination *because of sexual orientation.* He did not mention gender stereotyping below and he did not present any considered argumentation along that line.[4] His eleventh-hour statement to the district court that all harassment based on sexual orientation is "sex ... related" was an unsupported conclusion, not a developed argument—and conclusory statements of that sort cannot defeat summary judgment. *See Dow v. United Bhd. of Carpenters,* 1 F.3d 56, 59–60 (1st Cir.1993); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

 Where, as here, arguments made before the trial court and the appellate court, respectively, pull from the evidence common factual threads but weave them into distinctly different legal patterns, the new argument normally is deemed forfeited. *See Sammartano,* 161 F.3d at 98; *Slade,* 980 F.2d at 30; *Clauson v. Smith,* 823 F.2d 660, 665–66 (1st Cir. 1987). This is as it should be: considerations of fairness, institutional order, and respect for trial courts in our hierarchical system of justice all militate strongly in favor of such a rule. Consequently, the court of appeals should be extremely reluc-

tant to reverse a district court's decision because an appellant belatedly presents on appeal a legal theory, not argued below, hinged on a piece of evidence that was buried in the district court record. While such reluctance might be overcome if compelling reasons for an exception exist, nothing about the present situation justifies such a departure. Accordingly, we conclude that the district court did not err in granting summary judgment in New Balance's favor on the hostile environment claim.

### B. The Retaliatory Discharge Claim.

 The appellant's next claim rests on a somewhat different foundation. Section 4572(1)(A) of the MHRA makes it illegal for an employer to discriminate against an employee in retaliation for the employee's exercise of rights under the Maine Whistleblowers' Protection Act (MWPA), Me.Rev.Stat. Ann. tit. 26, §§ 831–840. The MWPA, in turn, protects an employee from discrimination when he has complained to the employer in good faith about a workplace-related condition or activity that he reasonably believes is illegal, unsafe, or unhealthy. *See id.* § 833(1)(A)-(B). In the same vein, albeit more narrowly, Title VII prohibits an employer from discriminating because an employee has opposed an employment practice made illegal under Title VII or "because [the employee] has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). Neither state nor federal law requires that the reported condition, activity, or practice actually *be* un-

---

4. Be that as it may, in a footnoted rumination the district court questioned whether plaintiffs in same-sex sexual harassment cases might properly argue that they were harassed because they did not conform to gender-based stereotypes. *See Higgins,* 21 F.Supp.2d at 75 n. 9. We think it prudent to note that the precise question that the district court posed is no longer open: *Oncale,* 523 U.S. at ——–——, 118 S.Ct. at 1002–03, confirms that the standards of liability under Title VII, as they

have been refined and explicated over time, apply to same-sex plaintiffs just as they do to opposite-sex plaintiffs. In other words, just as a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, *see Price Waterhouse,* 490 U.S. at 250–51, 109 S.Ct. 1775, a man can ground a claim on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity.

safe or illegal; under either scheme, an employee's reasonable belief that it crosses the line suffices, as long as the complainant communicates that belief to his employer in good faith. *See Bard v. Bath Iron Works,* 590 A.2d 152, 154 (Me.1991) (explicating relevant MWPA requirements); *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 33 (1st Cir.1990) (explicating relevant Title VII requirements); *cf. Mesnick v. General Elec. Co.,* 950 F.2d 816, 827 (1st Cir.1991) (analyzing a similar provision in the Age Discrimination in Employment Act).

 MWPA claims for retaliatory discharge, like Title VII claims, typically invite analysis under the framework first established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Petitti,* 909 F.2d at 31; *DiCentes v. Michaud,* 719 A.2d 509, 514 (Me.1998). To present a prima facie case, an employee-plaintiff must show (1) that he engaged in a protected activity, (2) that his employer thereafter cashiered him, and (3) that there was a causal nexus between the protected activity and the firing. *See Hoeppner v. Crotched Mountain Rehabilitation Center, Inc.,* 31 F.3d 9, 14 (1st Cir.1994); *Bard,* 590 A.2d at 154. If the employer then responds by proffering a legitimate, nonretaliatory reason for the discharge, the employee must adduce some significantly probative evidence showing both that the proffered reason is pretextual and that a retaliatory animus sparked his dismissal. *See Mesnick,* 950 F.2d at 827.

Citing this body of law, the appellant argued below that New Balance did not fire him for insubordination or for failing to be a team player (as it claimed), but, rather, because he complained repeatedly about a multitude of unsafe and illegal working conditions. The district court ruled that the appellant had failed to make out a prima facie case of retaliatory discharge. *See Higgins,* 21 F.Supp.2d at 73. Although assuming that "many" of his complaints antedated his firing and "may" have constituted protected conduct under the relevant statutes, the court concluded that the appellant had failed to demonstrate a causal connection between his complaints and his ouster. *Id.* In reaching this conclusion, the court relied heavily upon the lack of any evidence of temporal proximity between the stream of complaints, on the one hand, and the appellant's dismissal, on the other, and upon the absence of any proof that other similarly situated employees were treated differently. *See id.*

On appeal, the appellant turns his back on the vast majority of his complaints and zeroes in on the January 1996 incident involving Vitalone. In his view, this narrowing of the focus creates a tight temporal link between the two salient events (his most recent complaint about Vitalone and his firing). He then points to the statement in his affidavit to the effect that his supervisor (Plourde) once told him that he would be "out the door" if he ever groused about Vitalone again, and argues that this demonstrates a sufficient causal nexus.

 This revisionist approach brings with it insurmountable problems. First, there is no basis in the record for concluding that Higgins's complaints about Vitalone constituted protected speech. After all, Higgins did not assert below that at the time he complained he believed Vitalone's distemper to be in violation of Title VII or any other law, or to be a grave risk to his health. Nor did he maintain that facts existed to support a *reasonable* belief to that effect. Certainly, the mere inclusion in the record of New Balance's internal policy against discrimination based on sexual orientation does not, as the appellant now suggests, evidence either his state of mind or the reasonableness of his beliefs. This leaves the appellant's current claim high and dry: when an employer warns an employee that certain work-related behavior, not itself protected under the law, will be deemed inimical to the proper functioning of the shop, and the

employee disregards the warning, the employer cannot be sued for retaliation simply because it then does what it warned it would do. *See Taylor v. FDIC*, 132 F.3d 753, 765 (D.C.Cir.1997); *cf. Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 233 (1st Cir.1976).

 We need not elaborate on this point, for a second, independently fatal, problem is that the appellant comes tardily to his narrowed construct. In the lower court, he never ascribed any significance vis-à-vis his retaliation claim to Plourde's threat, the January 4 brouhaha, or any of the events of his last day at work. That being so, the Vitalone incident cannot be used now to satisfy the *McDonnell Douglas* prima facie case requirement. *See Sammartano*, 161 F.3d at 98; *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 22 (1st Cir.1998).

 The appellant has a fallback position. Courts sometimes say that the *McDonnell Douglas* paradigm operates only when there is no direct evidence of a discriminatory animus. *See, e.g., Price Waterhouse*, 490 U.S. at 244–47, 109 S.Ct. 1775 (plurality op.); *id.* at 278–79, 109 S.Ct. 1775 (O'Connor, J., concurring); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir.1998); *Mesnick*, 950 F.2d at 823. Seizing on this allusion, the appellant insists that the district court mis-analyzed his case because he had presented direct evidence of retaliation (Plourde's threat). This, too, is an argument that Higgins did not share with the district court. Hence, he has forfeited the right to raise it here.

 Let us be perfectly clear. When a claim involves complicated statutory schemes, as this one does, and the plaintiff "fail[s] to provide any analysis of the statutory scheme, to present any legal authority directly supporting [his] thesis, or to give any reason why" particular statutory provisions do or do not apply, the claim comprises "the merest of skeletons." *McCoy*, 950 F.2d at 22. Such a bareboned thrust

is insufficient to overcome a properly focused motion for summary judgment. *See Sammartano*, 161 F.3d at 98. So here: the argument that the Plourde threat constitutes direct evidence of discrimination has been forfeited. *See Slade*, 980 F.2d at 30; *Clauson*, 823 F.2d at 666. Because the district court did not err in concluding, on the arguments actually presented to it, that there was no sufficient showing of a causal connection between the appellant's discharge and his complaints about conditions in the workplace, we uphold its judgment in this respect.

## C. The Disability Discrimination Claim.

Finally, the appellant contends that New Balance failed to provide reasonable accommodations for his aural disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, and the MHRA. The district court rejected this contention because the appellant had not adduced evidence of discriminatory animus directed at his disability. *See Higgins*, 21 F.Supp.2d at 72.

In terms, this ruling is insupportable. New Balance argued below that, absent any evidence that it harbored a disability-related animus against the appellant, no discriminatory discharge claim would lie under either the ADA or the MHRA. This rationale is sound as far as it goes—it disposes handily of the appellant's discriminatory discharge claim (a claim that the district court quite properly rejected, *see id.* at 71 n. 7, and one which the appellant no longer presses)—but it does not go as far as the district court thought. When the court applied the same reasoning to block the appellant's failure-to-accommodate claim, it erred.

Under the ADA, a covered employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and

other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The pertinent provisions of the MHRA are to like effect. *See* Me.Rev.Stat. Ann. tit. 5, § 4572(1)(A). In order to facilitate inquiries into whether an employer's adverse employment decision was motivated by an employee's disability, courts generally use the *McDonnell Douglas* burden-shifting scheme. *See, e.g., Dichner v. Liberty Travel,* 141 F.3d 24, 29–30 (1st Cir.1998); *DiCentes,* 719 A.2d at 514 n. 10 (citing *Maine Human Rights Comm'n v. City of Auburn,* 408 A.2d 1253, 1261–63 (Me. 1979)). The third stage of this scheme, as we have interpreted it, requires that the plaintiff point to evidence, direct or circumstantial, of a particularized discriminatory animus. *See, e.g., Dichner,* 141 F.3d at 30; *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994); *Mesnick,* 950 F.2d at 823–25. The appellant's discriminatory discharge claim—a claim abandoned on appeal—exemplifies this genre of cases.

██ But under the ADA, "the term 'discriminate' includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ..., unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). Maine law is almost identical. *See* Me.Rev.Stat. Ann. tit. 5, § 4553(2)(E).[5] Unlike other enumerated constructions of "discriminate," this construction does not require that an employer's action be motivated by a discriminatory animus directed at the disability. Rather, any failure to provide reasonable accommodations for a disability is necessarily "because of a disability"—the accommodations are only deemed reasonable (and, thus, required) if they are needed

because of the disability—and no proof of a particularized discriminatory animus is exigible. *See Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1283–84 (7th Cir.1996). Hence, an employer who knows of a disability yet fails to make reasonable accommodations violates the statute, no matter what its intent, unless it can show that the proposed accommodations would create undue hardship for its business. *See* 42 U.S.C. § 12112(b)(5)(A); Me.Rev.Stat. Ann. tit. 5, § 4553(2)(E); *see also Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1300 (D.C.Cir.1998) (en banc). It follows inexorably that the *McDonnell Douglas* scheme is inapposite in respect to such claims. *See Pond v. Michelin N. Am., Inc.,* 183 F.3d 592, 597 n. 5 (7th Cir.1999); *Bultemeyer,* 100 F.3d at 1283–84; *see generally* Kevin W. Williams, *The Reasonable Accommodation Difference: The Effect of Applying the Burden Shifting Frameworks Developed under Title VII in Disparate Treatment Cases to Claims Brought under Title I of the Americans with Disabilities Act,* 18 Berkeley J. Emp. & Lab. L. 98, 151–59 (1997).

██ This distinction is in play here. To survive a motion for summary judgment on a failure-to-accommodate claim, a plaintiff ordinarily must furnish significantly probative evidence that he is a qualified individual with a disability within the meaning of the applicable statute; that he works (or worked) for an employer whom the ADA covers; that the employer, despite knowing of the employee's physical or mental limitations, did not reasonably accommodate those limitations; and that the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment. *See Lyons v. Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir. 1995); *Kralik v. Durbin,* 130 F.3d 76, 78 (3d Cir.1997). *But cf. Gaines v. Runyon,* 107 F.3d 1171, 1175 (6th Cir.1997) (requir-

---

**5.** In both statutes, a separate provision addresses the claim that an employer denied employment opportunities to a plaintiff because of the employer's refusal to make a reasonable accommodation. *See* 42 U.S.C. § 12112(b)(5)(B); Me.Rev.Stat. Ann., tit. 5, § 4553(2)(F).

ing that the accommodation be *both* reasonable *and* necessary for the plaintiff to perform the essential functions of his job). Here, the appellant's failure-to-accommodate claim satisfied these rather undemanding requirements: his affidavit stated, in substance, that he had a hearing impairment, that New Balance knew of it, and that management nonetheless failed to accommodate him either by supplying a fan or relocating a loudspeaker.

The rest is history. Despite the fact that the failure-to-accommodate claim was adequately presented, it was ignored by the defendant (whose motion for summary judgment did not discuss it) and misperceived by the district court (which applied the *McDonnell Douglas* burden-shifting framework to it). This induced the court to err by granting summary judgment on the ground that the record contained no evidence of a discriminatory animus toward the appellant's disability.

Of course, the trial court also wrote that New Balance had asked the appellant's co-workers to speak up when talking to him. *See Higgins,* 21 F.Supp.2d at 72. This undisputed fact does not save the judgment. Although an employer's provision of a specific accommodation may provide relevant circumstantial evidence in respect to the reasonableness *vel non* of a different accommodation, *see, e.g., Vande Zande v. Wisconsin Dep't of Admin.,* 44 F.3d 538, 546 (7th Cir.1995), that accommodation will not always be enough to satisfy the employer's duty under the law, *see Ralph v. Lucent Technologies, Inc.,* 135 F.3d 166, 171–72 (1st Cir.1998) ("The duty to provide reasonable accommodation is a continuing one ... and not exhausted by one effort."); *see also Criado v. IBM Corp.,* 145 F.3d 437, 444–45 (1st Cir.1998). Thus, New Balance's laudable directive fell short of what was needed to authorize summary judgment.

Because a remand is necessary on this aspect of the case, we add one further observation. While this appeal was pending, the Supreme Court decided a series of ADA cases, including *Sutton v. United Air Lines, Inc.,* —— U.S. ——, ——, 119 S.Ct. 2139, 2149, 144 L.Ed.2d 450 (1999) (holding that courts should take corrective measures into account when deciding whether a plaintiff is "substantially limited in any major life activity" and thus disabled under the ADA). *Sutton* may well put the appellant's claim in an entirely different light (depending, inter alia, on the extent to which his hearing impairment is correctable by a hearing aid). *Sutton,* however, calls for a particularized, fact-specific analysis, *see id.,* and at this point the record is not sufficiently developed to allow us to assess *Sutton's* impact on the case at hand. Accordingly, we deem it preferable to leave all *Sutton*-related issues, in the first instance, to the *nisi prius* court.

## III. CONCLUSION

We need go no further. For the reasons mentioned above, we affirm the entry of summary judgment for New Balance on all claims, save only the appellant's failure-to-accommodate claim under the ADA and the MHRA. As to that claim, we vacate the judgment and remand for further consideration.

*Affirmed in part, vacated in part, and remanded. No costs.*