**Sheira Cruz MONTES, et al, Plaintiffs,**

**v.**

**COOPERATIVA DE SEGUROS MULTIPLES DE PUERTO RICO ("COSVI"), Defendant.**

**No. 99–2158.**

United States District Court, D. Puerto Rico.

Sept. 28, 2001.

---

Antonio M. Cuevas–Delgado, Cuevas, Kuinlam & Bermudez, Banco de Ponce, Hato Rey, PR, for defendant.

Rafael Cuevas–Kuinlam, Hato Rey, PR, for defendant.

Charles S. Hey–Maestre, San Juan, PR, for plaintiff.

## ORDER

DOMINGUEZ, District Judge.

The above captioned case is a claim by Co–Plaintiff Sheira Cruz Montes against her former employer, Cooperativa de Seguros Multiples de Puerto Rico, alleging sexual harassment under federal law (42 U.S.C. §§ 2000e *et. seq.*) and state law (20 P.R. Laws Ann. §§ 146, *et seq.;* 25 P.R. Laws Ann. §§ 1321, *et seq.;* and 25 P.R. Laws Ann. §§ 155, *et seq.*).

. The employer has moved for Partial Summary Judgment (Docket # 19). Defendant asserts two principal claims: (A) because the doctrine of "continuing violation" is not applicable here, all allegations of sexual harassment and discrimination occurring before May of 1996 should be dismissed because said acts have occurred outside the three hundred (300) day period to file a charge with the EEOC; and (B) the allegations regarding acts of reprisal should be dismissed because Plaintiffs

have failed to demonstrate a causal connection between protected conduct and adverse acts. Plaintiffs' Opposition (Docket # 23) was timely filed given the extension of time granted by the Court during a Scheduling Conference on November 14, 2000 (the day the Opposition should originally have been submitted). Defendant submitted a Reply to Plaintiffs' Opposition (Docket # 24) and Plaintiffs returned volley with a Surreply (Docket # 25); the Court granted leave for both during the November 14, 2000, Scheduling Conference.

During a Status Conference held on April 27, 2001, the Court denied Defendant's claim (B) above, stating: "...Plaintiffs' retaliation claims and certain incidents allegedly illustrative of a hostile work environment will survive resolution of dispositive motions." See Minutes of Proceedings from April 27, 2001 (Docket # 26). Thus we have claim (A) remaining, which is resolved herein below.

## Summary Judgment

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. *Serapion v. Martinez*, 119 F.3d 982, 986 (1st Cir.1997) (citing *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995), collecting cases). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R .CIV. P. 56(c).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact. *Perez v.*

*Volvo Car Corporation*, 247 F.3d 303, 310 (1st Cir.2001); *Grant's Dairy - Maine, LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.*, 232 F.3d 8, 14 (1st Cir.2000); *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). In applying this screen, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (i.e., the party opposing the summary judgment motion). *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000). An absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial. *Perez, supra; see also Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35–36 (1st Cir.1998); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Id.* "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry, supra.*

Defendant, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment," *Cortes–Irizarry, supra*, at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood...." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936

(1st Cir.1987). "[E]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996). The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." *Vega–Rodriguez, supra*, at 178.

**Factual Summary**

The Court herein provides the factual scenario combining clearly undisputed facts (such as the date Ms. Cruz was hired) with all reasonable inferences from potentially disputed facts helpful to the party resisting summary judgment. *Cortes–Irizarry, supra*, at 187.

Co–Plaintiff, Sheira Cruz, was employed by Defendant on December 26, 1994 as a "clerk" through a temporary contract. Ms. Cruz initially became interested in the position through conversations she had with Ms. Evelyn Burgos, the Defendant's Director of Human Resources. Ms. Cruz knew Ms. Burgos because the latter was a patron at the former's prior place of employment, a beauty salon.

In late December of 1994, when Ms. Cruz started her employment, she received copies of the Defendant's Personnel Manual and Policy Against Sexual Harassment (evidenced by her signed receipt). When her temporary status expired, she was retained in a regular position (still as a clerk), subject to a probationary period. On May 2, 1995, she was informed that she had passed her probationary period.

During her employment she was supervised by Mrs. Ivette Rodríguez and Mr. Victor Acosta, who both reported to Mr. Luis Toledo.

Shortly after beginning her employment, in early 1995 Ms. Cruz was approached by Mr. Andrés Rodríguez, who was Assistant to the Vice–President of Defendant's Medicare Division (it may be inferred that Ms. Cruz was under the impression that Mr. Rodríguez was a Vice–President). Mr. Rodríguez asked her to apply for a secretarial position in his office. During an interview for this position, Mr. Rodríguez asked her numerous questions which Ms. Cruz considered offensive, even after Ms. Cruz objected to the questions. The objectionable questions were asked as to Plaintiff's marital status and other aspects about her personal life. As apparently Ms. Cruz was a model, or Mr. Rodríguez asked her whether she was and she responded affirmatively, Mr. Rodríguez also asked her whether she would model in the nude.

Ms. Cruz became very upset about the questions, and immediately went to complain to Ms. Burgos (the Defendant's Director of Human Resources).

The interview was followed by numerous and frequent telephone calls by Mr. Rodríguez to Ms. Cruz at her workplace, as well as invitations to date and other unwanted advances. According to Ms. Cruz, these all occurred during the first couple weeks after the interview (January of 1995), and then again after she returned from maternity leave (prior to May 6 of 1996, because the incidents were described in a handwritten statement signed by Ms. Cruz and dated May 6, 1996).

Plaintiffs state that throughout 1995 and 1996 Ms. Cruz complained to Ms. Burgos about the sexual harassment, and Ms. Burgos discouraged her from complaining. Ms. Burgos allegedly told Ms. Cruz that the acts she complained of were not actually sexual harassment; further, Ms. Burgos

dismissed Ms. Cruz's complaint by stating they were misunderstandings created by the physical attractiveness of Ms. Cruz. Ms. Cruz notes she followed her advice.

Later (though unclear exactly when from the record), insulting and offensive comments were also made to Ms. Cruz regarding her dressing habits by Ms. Burgos. It is alleged that Ms. Burgos even asked her whether Ms. Cruz was wearing underwear, and physically examined her to that end.

Later in 1995 (again, exact date not apparent), Ms. Cruz, while pregnant, requested a slight modification of her work hours (to start and leave 30 minutes early) to accommodate classes. This request was denied, such denial attributed by Ms. Cruz to the hostile work environment against her (supported by her explanation that the request had been granted to fellow employees similarly situated).

Ms. Cruz returned from maternity leave on February 28, 1996. Upon her return to work, she once again suffered a variety of reprisals and a hostile work environment (denial of the ability to extract breast milk, transfer to isolated cubicle, denial of pay raise, and others). Immediately upon her return she was harassed again by Mr. Rodríguez. On one occasion Mr. Rodríguez asked Ms. Cruz, in front of Ms. Cruz's mother, when the two of them were going to go out on another date.

Ms. Cruz again complained to H.R. Director Ms. Burgos, who finally noted she would speak with Mr. Rodríguez. In May of 1996, apparently Ms. Cruz complained once again to Ms. Burgos, because the latter allegedly discouraged Ms. Cruz from filing a claim. Ms Burgos did in fact meet with Mr. Rodríguez, along with in-house counsel Ovidio Santo, Esq. Ms. Cruz admitted in deposition that after the meeting Mr. Rodríguez ceased the harassment.

In February of 1998 Ms. Cruz notes Mr. Rodríguez started the harassment again. Plaintiff resigned on June 11, 1998. Ms. Cruz filed her charge of discrimination with the anti-discrimination unit of the Department of Labor of the Commonwealth of Puerto Rico and the Equal Employment Opportunity Commission on October 8, 1998. The present Complaint was filed on October 14, 1999. The Defendant's Motion for Partial Summary Judgment's remaining claim is related to acts occurring prior to May of 1996; because of our decision herein, the alleged acts subsequent to February of 1998 (when the harassment allegedly started anew) are not relevant to the issues currently subject to the partial summary judgment.

**Sexual Harassment**

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits any employer, employment agency, or labor organization from engaging in unlawful employment practices based upon an individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e 2(b). Specifically, the term employer refers to a person engaged in an industry affecting commerce, employing fifteen (15) or more employees for twenty (20) or more weeks in the current or preceding calendar year from the date of the alleged discriminatory act.

Since 1976 when a federal court first held that sexual harassment is a form of gender discrimination prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), courts have recognized two distinct but related manifestations. *Provencher v. CVS Pharmacy*, 145 F.3d 5, 13 (1st Cir.1998). The first, *quid pro quo* harassment occurs when a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, or pun-

ishes that subordinate for refusing to comply. This is not at issue at bar.

■ The second, "hostile environment" harassment, "occurs when one or more supervisors or co-workers create an atmosphere so infused with hostility toward members of one sex that they alter the conditions of employment for them." *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988). Thus, in creating a hostile working environment, supervisors or co-workers "force 'a man or woman [to] run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living....' " *Id.,* citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). In this case, Plaintiffs' claims fall under the hostile environment manifestation of sexual harassment.

■ Not all harassing conduct rises to the level of an actionable claim for sexual harassment. Rather, to provide an actionable claim, the conduct complained of must meet certain standards. First, the record "as a whole" and the "totality of the circumstances" must reveal that the conduct complained of is unwelcome and "sufficiently severe or pervasive to ... create an abusive working environment.' " *Id.* And second, the complaining employee must present a plausible legal theory, backed by probative evidence, that the hostile environment subsisted "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). *See also Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 258 (1st Cir.1999). The employee " 'must always prove that the conduct at issue was not merely tinged with offensive sexual conno-

tations,' but in fact constituted discrimination 'because of ... sex.' " *Id.*[1]

■ If the claiming employee does not meet the stated requirements, summary judgment may be entered dismissing the Complaint. *Id. See also Oncale v. Sundowner Offshore Servs. Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). If, however, the claiming employee is able to make out a *prima facie* case of hostile environment sexual harassment, the defendant is then afforded the opportunity to show that the events did not take place, that they were isolated or genuinely trivial, or that the claim is otherwise barred as a matter of law. *Lipsett, supra,* at 898.

### Title VII Statute of Limitations

Prior to filing a Title VII employment discrimination cause of action in court, Title VII requires aggrieved individuals to file an administrative charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within three hundred days if the person is in a "deferral jurisdiction" such as Puerto Rico. 42 U.S.C. § 2000e–5(e)(1). *See also Landrau–Romero v. Banco Popular De Puerto Rico,* 209 F.3d 10 (1st Cir.2000); *Thomas v. Eastman Kodak Company,* 183 F.3d 38 (1st Cir.1999).

### Continuing Violation Theory

■ "The continuing violation doctrine creates an exception to Title VII's 300–day limitation period when the unlawful behavior complained of is deemed ongoing. A continuing violation allows a plaintiff not only to allege otherwise timebarred acts, but more concretely, to re-

---

1. "The statutory 'because of ... sex' requirement is not met merely because workplace harassment involves sexual matters: the substance of the violation is discrimination based on sex or, as the Court put the matter, 'wheth- er members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.' " *Higgins,* 194 F.3d at 258–259.

ceive damages, such as back pay, based on and reaching back to those acts." *Provencher v. CVS Pharmacy, Division of Melville Corporation*, 145 F.3d 5, 14 (1st Cir.1998) (citations omitted). Within the First Circuit, two kinds of continuing violations are recognized: systemic or serial. *Id.,see also, DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997); *Sabree v. United Brotherhood of Carpenters and Joiners Local 33*, 921 F.2d 396 (1st Cir. 1990).

A systemic violation occurs where there exists a discriminatory policy or practice that itself continues into the limitation period, regardless of whether there is an identifiable act of discrimination within the period. *Id.* This is not the case at bar.

A serial violation is present where there exist a number of discriminatory acts emanating from the same discriminatory animus, with each act constituting a separate wrong actionable under Title VII, and there is at least one violation within the statute of limitations period that anchors the earlier claims. *Id.* "Merely residual effects of past discriminatory conduct, however, are not themselves acts of discrimination and therefore will not satisfy the anchor violation requirement." *Id.*, at 14. *See also DeNovellis*, *supra*, at 309.

However, "[e]ven where the plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that [s]he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." *Provencher, supra; Sabree, supra.* "[A] knowing plaintiff has an obligation to file promptly or lose his claim: '[t]his can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series

of acts and is thereby able to perceive the overall discriminatory pattern.'" *Provencher, supra,* at 15. *See also Thomas, supra,* at 53–54.

The Court finds this exception to be present, thereby justifying the granting of Defendant's Partial Summary Judgment on this matter. The record is full of factual circumstances wherein Ms. Cruz would have been aware that she was being discriminated against. The numerous visits to the HR Director, Ms. Burgos, to *complain* about these acts might be sufficient enough. But Ms. Cruz herself openly admits she knew of the harassment. Her signed handwritten letter (dated either May 3, 6 or 8, 1996; the exact day is illegible in the Court's copy) addressed to Ms. Burgos opens with: "I confirm our meeting with you of May 2, regarding feeling harassed by an executive of the company". Letter included as Exhibit 20 of Defendant's Exhibits to Motion for Partial Summary Judgment (Docket # 19), and attached hereto as Appendix A.

In the next paragraph Ms. Cruz identifies this "executive of the company" as Rodríguez, and further states that Ms. Burgos **"asked me if I wanted to submit a complaint and I told her I didn't, that I could put him in his place . . . ."** (Emphasis added.) Thus, not only was she aware that she may have been harassed, but she admits to have been given the possibility of filing a complaint. The very next paragraph starts with another acknowledgment that Rodríguez "once again has started to harass" her. Ms. Cruz supplies the final nail for this coffin in her conclusion: "I don't want to harm Mr. Andres Rodriguez but I do this for the record, so that on a next occasion **then legal action is taken**." (Emphasis added.)

In discussing *Sabree, supra,* the *Provencher* Court noted they "rejected the plaintiff's continuing violation claim because the plaintiff admitted that he believed, at every turn, that he was being discriminated against. We reasoned that a knowing plaintiff has an obligation to file promptly or lose his claim." *Provencher, supra.* "This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern." *Sabree, supra,* at 401–02. Again, not only did Ms. Cruz believe, at every turn, that she was being discriminated against, but she also knew she had the right to file a claim, and admittedly openly gave it thought and decided she could handle it on her own ("...that I could put him in his place...."; "I don't want to harm Mr. Andres Rodriguez but I do this for the record, so that on a next occasion then legal action is taken.").

■ Plaintiffs counter with an allegation along the lines of equitable estoppel. Plaintiffs have alleged on numerous occasions that Ms. Burgos counseled Ms. Cruz not to file a claim, and because of her reliance on, and trust in, Ms. Burgos, Ms. Cruz decided to take the advice. The Court notes the only "factual" support of these claims are Ms. Cruz's deposition and a follow-up Sworn Statement of hers; both which could be considered the "conclusory allegations" frowned upon in summary judgment analysis. *Ayala–Gerena, supra.* Without entering into the possible applicability of the equitable estoppel doctrine to cases of this nature, the Court finds her argument unpersuasive, given the contradiction in her signed statement of May, 1996. Again, "[Ms. Burgos] **asked me if I wanted to submit a complaint and I told her I didn't, that I could put him in his place...."** (Emphasis added.)

**The State Claims**

■ Sexual harassment is also unlawful in the Commonwealth of Puerto Rico. Law No. 100 of June 30, 1959 (20 P.R.L.A. § 146, *et seq.*), Law No. 69 of July 6, 1985 (29 P.R.L.A. § 1321, *et seq.*), and Law No. 17 of April 22, 1988 (29 P.R.L.A. § 155, *et seq.*), all provide causes of action under the proper circumstances. All have statute of limitations of one year as well, which Plaintiffs have cited themselves.

Plaintiffs attempt to raise an issue as to when the statute of limitations period began to run. Plaintiffs incorrect argument that it would only start once Ms. Cruz turned 21 is itself self-defeating because Ms. Cruz turned 21 on September 20, 1996, and she did not file her claim until October 8, 1998. Under the more plausible statute of limitations commencement possibilities, the Court would look to when the Plaintiff knew (or should have known) of the sexual harassment (which would have been as early as January, 1995, and as late as May, 1996), or when the sexual harassment ceased (which Plaintiff admits was in May of 1996 for the first round of alleged harassment). *See Sanchez v. Autoridad de Energia Electrica,* 1997 WL 878520(PR), 142 D.P.R. 880. Again, the claim was filed on October 8, 1998; any claims for alleged acts of sexual harassment prior to October 9 of 1997 are time-barred as to local laws.

**WHEREFORE,** the Court finds the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact regarding any alleged federal claim which would have taken place more than 300 days, and any alleged state claim which would have taken place more than 365

days, prior to October 8, 1998, and that the Defendant is entitled to judgment as a matter of law in this regard. Thus, Defendant's Partial Summary Judgment is **GRANTED** in that no sexual harassment discrimination claims based upon facts occurring more than 300 days prior to October 8, 1998, are actionable at bar.

However, the Court reminds the parties of the Supreme Court's decision in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

> A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

*Id.,* 431 U.S. at 558, 97 S.Ct. at 1889. *See also Borrero–Rentero v. Western Auto Supply Co.,* 2 F.Supp.2d 197, 201 (D.P.R. 1998) (authorizing parading before the jury evidence that may fall outside the period only as "relevant background evidence," but not actionable along *United Air Lines, Inc., supra* ).

**IT IS SO ORDERED.**