**Betsey RATHBUN, Plaintiff,**

v.

**AUTOZONE, INC., Defendant.**

**No. 01–401S.**

United States District Court, D. Rhode Island.

March 17, 2003.

Stephen A. Rodio, Esq., Rodio & Brown, Providence, RI, for Plaintiff.

Joseph D. Whelan, Esq., Hinckley, Allen & Snyder LLP, Providence, RI, Tracy Kern Hidalgo, Esq., Renee Gluth, Esq., Frilot, Partridge, Kohnke & Clements, LC, New Orleans, LA, for Defendant.

## DECISION AND ORDER

SMITH, District Judge.

Plaintiff Betsey Rathbun ("Plaintiff" or "Rathbun") originally brought this action against her employer, Autozone, Inc. ("Autozone") in Providence County Superior Court. Autozone timely removed the case to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, pursuant to 28 U.S.C. § 1446. The Complaint alleges employment discrimination under the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28–5–1 *et seq.* (2000), and the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42–112–1 *et seq.* (2000).

Specifically, Plaintiff alleges that Autozone engaged in two types of sex discrimination against her in violation of FEPA. First, she claims that Autozone failed to promote her on account of her sex; and second, that Autozone paid her less than her male counterparts over the course of her employment, also because of her sex. The RICRA count essentially duplicates the FEPA claim, and rises or falls depending on the viability of Plaintiff's FEPA allegations.[1]

---

1. RICRA was passed by the Rhode Island General Assembly as a reaction to the United States Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), narrowly interpreting 42 U.S.C. § 1981, the Civil

This matter is before the Court on Defendant Autozone's Motion for Summary Judgment with respect to the two remaining counts contained in Plaintiff's Complaint, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[2] This Court heard oral arguments on January 10, 2003.

For the reasons that follow, this Court is persuaded by each of Autozone's arguments and therefore grants its Motion for Summary Judgment as to all of Plaintiff's claims.

## I. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The Judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the court must view the facts in the record and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). The moving party bears the burden of showing that no evidence supports the nonmoving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

With the Rule 56(c) standard as a guide, this Court is also acutely mindful of the care that must be exercised when considering motions for summary judgment in the employment discrimination context. *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 61 (1st Cir.1999) (noting that courts should be cautious about *sua sponte* finding non-discriminatory reasons for apparently disparate treatment). Nonetheless, Rule 56(c) compels summary judgment in discrimination cases, even in cases where motive or intent are at issue, if the nonmoving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir.2001) (citing *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir.2000)).

## II. *Factual and Procedural Background*

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the

---

Rights Act of 1866. RICRA protects Rhode Island workers from discrimination in a variety of commercial activity, including employment. *Ward v. City of Pawtucket Police Dept.*, 639 A.2d 1379, 1381 (R.I.1994). RICRA is a relatively young statute, with little developed case law. *Iacampo v. Hasbro, Inc.*, 929 F.Supp. 562, 573 n. 5 (D.R.I.1996). In the employment context, the vast majority of Rhode Island state-law discrimination claims arise under FEPA. However, it is now a common practice for attorneys filing employment discrimination claims to file such claims under RICRA in addition to FEPA and/or Title VII.

**2.** Plaintiff's Complaint also sets forth claims of negligent and/or intentional infliction of emotional distress, defamation, and disability discrimination. Autozone moved for summary judgment with respect to these counts as well, but Plaintiff agreed voluntarily to dismiss these claims with prejudice. As a result, Plaintiff's sex discrimination claims are the only claims under consideration by this Court.

nonmoving party. Viewing the evidence in this light, the facts in this case are as follows:

Defendant Autozone is a Nevada corporation with its principal place of business in Memphis, Tennessee. Autozone operates a number of retail stores in Rhode Island.

Plaintiff is a Rhode Island citizen. In 1995, Plaintiff began working for a local auto parts store known as Auto Palace. She worked as a part-time cashier in its Cranston, Rhode Island store. As a part-time cashier, Plaintiff was responsible for running the cash register, stocking the store shelves, and assisting store customers. In 1998, Autozone purchased the Auto Palace store where Plaintiff was employed. At the time of the changeover, she was earning $6.25 per hour.

Autozone organized the employees at the Cranston store into four separate job classifications: (1) Customer Service Representative ("CSR"); (2) Parts Sales Manager ("PSM"); (3) Assistant Store Manager ("ASM"); and (4) Store Manager ("SM"). Of these four positions, the PSM, ASM, and SM positions are considered management level positions.

When Autozone took over in March of 1998, it assigned the Plaintiff to the position of part-time CSR based on her experience level and her prior duties as a part-time cashier with Auto Palace. As a CSR, Plaintiff's interaction with store customers increased and she spent more time working with auto parts. Plaintiff had no management duties as a CSR. She was not responsible for any store paperwork, scheduling, or the disciplining of store employees. As a result of her new position, Plaintiff received a $0.34 per hour raise, which increased her salary to $6.59 per hour. Despite this pay raise, Plaintiff testified at her deposition that she was unhappy with the level of the raise because her co-workers had indicated that the pay raise was expected to be higher.

In April of 1998, Plaintiff received a promotion to full-time CSR, which resulted in an additional raise of $0.33 per hour, bringing her hourly salary to $6.92. Six months later, Plaintiff requested a promotion to the position of PSM. In response to this request, Jeff Mello, her District Manager, informed Plaintiff that she was not yet ready for a promotion to a PSM position. In response, Plaintiff testified that she asked Mr. Mello if she was being denied the promotion because of her gender. Mr. Mello denied the Plaintiff's suggestion and insisted that she learn the duties required of a PSM before applying again for the position. Mr. Mello provided Plaintiff with a checklist of duties that an applicant should learn before applying for a PSM position.

In September of 1999, despite not having learned all of the duties on the checklist, Plaintiff was promoted to PSM and received a pay increase of $0.53 per hour, which brought her salary to $8.00 per hour. Plaintiff was again unhappy with the level of this raise. Mr. Mello informed her that she was likely to receive an additional raise at the time of her annual performance appraisal in March of 2000.

Autozone conducts annual performance appraisals of its employees. At the time of an appraisal, Autozone employees are rated and placed into one of four categories: "fails to meet expectations," "needs improvement," "achieves expectations," and "exceeds expectations." The level of an employee's raise is determined by where the employee is rated. At her deposition, the Plaintiff acknowledged that the range for raises following an annual performance appraisal is typically between 3% and 5% of an employee's salary.

In March of 2000, Plaintiff received a $0.48 per hour raise in connection with her annual performance appraisal, which increased her hourly salary to $8.48.

Throughout this period of employment, Plaintiff believes that male employees of Autozone, were promoted to positions ahead of her and were paid better because they were male. Convinced of the discriminatory activities of her employer, on or about November 16, 2000, Plaintiff filed a charge of discrimination with the Rhode Island Commission for Human Rights ("RICHR"). RICHR thereafter, at Plaintiff's request, issued Plaintiff a notice of right to sue as required by FEPA. R.I. Gen. Laws § 28–5–24.1. She filed her Complaint with this Court on August 3, 2001.

### III. Discussion

 The gravamen of Plaintiff's sex discrimination Complaint is that on several occasions she was passed up for promotion at Autozone, and was continually paid less, because she is a woman. She claims that her promotion to a PSM position was delayed and that she was never offered an ASM position because of her gender. During the time period that frames her Complaint, Plaintiff claims that her hourly rates of pay were consistently lower than other male employees.

In support of her claims, Plaintiff refers the Court to a number of Autozone employees whom she claims were treated more favorably than she with respect to promotions and rates of pay. Specifically, the Plaintiff lists the following individuals:

### The ASM position

(1) Tom Disano; Hired as an ASM in September of 1999.

(2) Nick Medeiros; Hired as an ASM in April of 2000.

(3) Rick Allen; Promoted to ASM in April of 2000.

(4) Jose Rios; Promoted to ASM in February of 2001.

### The PSM position

(1) Kevin Rooney; Promoted to PSM in February of 1998.

(2) Evan Hopkinson; Promoted to PSM in March of 1998.

(3) Chris Brosco; Promoted to PSM in March of 1999.

Throughout this time period, many of these employees, and others, were also paid at higher hourly rates than Plaintiff. As an initial matter, the Court must address the Plaintiff's reference to male employees who were promoted to PSM positions *after* the Plaintiff's promotion to PSM in September of 1999. Plaintiff has failed to explain how the promotion of a male employee to PSM after she was promoted to PSM is evidence of discrimination. These promotions are so plainly irrelevant and immaterial to the claims made by the Plaintiff that they require no discussion and can be summarily disregarded. The remaining promotional claims—those that occurred prior to Rathbun's September 1999 promotion—are the only such promotions that could possibly support her claim of disparate treatment.

At this stage, Autozone essentially advances two defenses in an effort to dismiss the Plaintiff's claims. First, Autozone argues that the Plaintiff's claims are barred by the statute of limitations. Second, Autozone argues that, even if Plaintiff's claims do not fail on statute of limitations grounds, the Plaintiff still falls short of the evidentiary burden established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This Court will address both arguments.

A. *Statute of Limitations*

1. FEPA

FEPA provides that an aggrieved individual must bring a charge with the RICHR within one year of the allegedly unlawful employment practice. R.I. Gen. Laws § 28–5–17. Allegedly unlawful employment practices outside that time period will not be considered. In this case, Plaintiff filed her charge with the RICHR on November 16, 2000. Consequently, only those practices that occurred subsequent to November 16, 1999, fall within the relevant time period for purposes of Plaintiff's FEPA failure to promote claim.

Of the male Autozone employees that the Plaintiff relies upon in support of her discrimination claim, only the promotions of Nick Medeiros and Rick Allen occurred subsequent to November 16, 1999, and prior to November 16, 2000. The remaining individuals fall outside the limitations period.

Plaintiff attempts to bring these practices within the statute of limitations by arguing that the failure to promote and unequal pay claims constitute a series of related, connected acts, or a "continuing violation," and therefore may be considered by this Court. In support of this proposition, Plaintiff cites to *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), which held that in the context of hostile environment Title VII cases there may often be grounds for finding continuing violations. However, in *Morgan*, the Supreme Court indicated that discrete acts such as the failure to promote are easy to identify and therefore are not likely candidates for application of the continuing violation doctrine. *Id.* at 2073. This Court agrees, and therefore declines to find the linkage the Plaintiff prays for with respect to the failure to promote claims. The only instances of a failure to promote that argu-

ably support the Plaintiff's claim under the *McDonnell Douglas* framework, outlined below, are Nick Medeiros and Rick Allen.

▇ However, with respect to the unequal pay claims, the Plaintiff's "continuing violation" doctrine argument holds more water. Unlike discrete acts such as termination from employment or, as in this case, a failure to promote, unequal pay claims are of a continuing nature in that each time a plaintiff receives a paycheck that is lower than it should be, based on allegedly discriminatory reasons, the plaintiff is injured. *Bazemore v. Friday*, 478 U.S. 385, 395, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986); *see Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1011 (10th Cir. 2002). Therefore, all of Plaintiff's unequal pay claims brought under FEPA survive Autozone's procedural attack.

2. RICRA

▇ While many of the Plaintiff's FEPA allegations regarding her failure to promote claim are barred by FEPA's one-year limitation period, that preclusion does not so clearly bar those acts from being considered as part of Plaintiff's RICRA claim. Unlike FEPA, RICRA does not contain its own statute of limitations period, and this issue has not yet been addressed by the Rhode Island Supreme Court. It is arguable that RICRA utilizes the general three-year statute of limitations period for injuries to the person set forth in R.I. Gen. Laws § 9–1–14(b). Under this interpretation, identical allegations supporting an employee's FEPA cause of action for employment discrimination could be time-barred by the one-year limitations period contained in § 28–5–17, yet still support a RICRA cause of action.

This Court believes that such an anomalous application of these statute of limitation periods effectively would make the

one-year statute of limitations contained in FEPA meaningless, and would undermine the sound public policy that underlies the relatively short statutes of limitation contained in employment discrimination statutes. Anti-discrimination statutes such as FEPA typically contain short limitations periods to "protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (commenting on the 180–day limitations period provided under Title VII). The Rhode Island Supreme Court has similarly stressed the importance of FEPA's one-year limitations period. In discussing the one-year limitation period in FEPA, the court has stated as follows:

> The time limit imposed by § 28–5–18 also ensures that persons charged with violating the Act will receive notice of those charges within one year of the alleged violation. Prompt notification will enable such persons to investigate alleged violations and to preserve evidence necessary to conciliate or to rebut the Commission's charges.

*Roadway Express, Inc. v. Rhode Island Comm'n for Human Rights,* 416 A.2d 673, 676 (R.I.1980). Similarly, in *Ferguson Perforating and Wire Co. v. Rhode Island Comm'n for Human Rights,* 415 A.2d 1055 (R.I.1980) the Rhode Island Supreme Court viewed the one-year limitation provision in FEPA as necessary to protect an employer's procedural due process rights and reflected the General Assembly's in-

tent to provide employers with procedural safeguards "designed to provide respondents with adequate time for such matters as scheduling witnesses, hiring lawyers, and gathering and compiling evidence of the alleged violations before witnesses' memories of the incidents become too obscure." *Id.* at 1056. Sound principles of statutory construction also support this view. The General Assembly could not have intended to abrogate the time limitation safeguards contained in FEPA when it subsequently enacted RICRA. On numerous occasions, the Rhode Island Supreme Court has held that courts are to presume that legislatures know of their prior enactments when passing a later law. As a result, legislatures are presumed not to have disturbed their prior enactments unless the language specifically so states. *See R.I. State Police v. Madison,* 508 A.2d 678 (R.I.1986); *Langdeau v. Narragansett Ins. Co.,* 94 R.I. 128, 179 A.2d 110 (R.I. 1962); *Loretta Realty Corp. v. Massachusetts Bonding Ins. Co.,* 83 R.I. 221, 114 A.2d 846 (1955). To hold otherwise, would allow a plaintiff that missed the FEPA statutory deadline, or as in this case, that brings allegations that fall clearly outside the limitations period, to bring those allegations under RICRA and benefit from a less restrictive statute of limitations. This Court declines to reach such a result.[3] Therefore, this Court finds that the one-year statute of limitations period applicable to Plaintiff's FEPA claim is also applicable to her RICRA claim.

It is necessary to pause briefly to address the one case in which the Rhode

---

**3.** The Massachusetts Supreme Judicial Court has reached a similar conclusion when interpreting the Massachusetts Fair Employment Practices Act and other Massachusetts civil rights acts. *Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 631 N.E.2d 555, 557 (Mass. 1994) (holding that a person may not evade the procedural requirements of the Fair Employment Practices Act by recasting a dis-

crimination claim as a violation of the Massachusetts Equal Rights Act); *Mouradian v. General Elec. Co.,* 23 Mass.App.Ct. 538, 503 N.E.2d 1318, 1321 (Mass.App.Ct.1987) (holding that plaintiff could not maintain action under Massachusetts Civil Rights Act where he failed to file a timely complaint with the Massachusetts Commission Against Discrimination).

Island Supreme Court has addressed the sometimes conflicting application of FEPA and RICRA in the employment context: *Ward v. City of Pawtucket,* 639 A.2d 1379 (R.I.1994). In *Ward,* a police officer had filed an action against the Pawtucket Police Department and other city officials alleging sex discrimination and a violation of RICRA based on the fact that she was not selected for promotion in spite of her ranking of first on the applicable promotion list. The plaintiff elected to bring an action in Superior Court under RICRA and obtained a temporary restraining order enjoining the Pawtucket Police Department from promoting anyone to the permanent rank of lieutenant. In response, the Police Department moved to dismiss the action under Rule 12(b)(1) claiming that Ward had failed to exhaust her administrative remedies, specifically that she had failed to file a charge with the RICHR pursuant to FEPA. The Superior Court agreed with the Police Department and dismissed the action.

On appeal, the Rhode Island Supreme Court disagreed and held that the remedies available to an aggrieved party under RICRA, including the right to injunctive relief, were clearly provided by RICRA. *Id.* at 1382. The court explicitly found that there is no language in RICRA "[r]equiring or even suggesting that a plaintiff must first exhaust any or all administrative remedies before filing a civil action." *Id.* Thus an aggrieved individual could bring an employment discrimination action under RICRA, without abiding by the prefiling administrative requirements of FEPA. The *Ward* decision did not address the question of whether the FEPA statute of limitations should be applied to actions brought under both FEPA and RICRA. It is possible to read *Ward* broadly to include the statute of limitations within the group of administrative requirements of FEPA that a RICRA claim is not required to meet. However, such a reading would plainly result in an anomaly: an employment discrimination claim could be time-barred under FEPA (the specific act designed to remedy employment discrimination) yet survive under RICRA (the later-enacted, more generic anti-discrimination law). A better reading of *Ward,* in this Court's view, is one which does not nullify FEPA's one-year statute of limitations. The *Ward* decision involved an employee who sought emergency *injunctive* relief under RICRA in order to prevent an immediate threatened discriminatory act. The court held that such a plaintiff is not required to abide by the prefiling administrative requirements of FEPA. 639 A.2d at 1382. This case, unlike *Ward,* does not involve a request for injunctive relief and no emergent issues are presented by the parties.[4] Thus *Ward* is inapplicable. The only question in this case is whether this Court should import the one-year statute of limitations from FEPA, or the general three-year limitations period for tort actions. This Court believes that FEPA's one-year statute of limitations should be applied to Rathbun's RICRA claim. Application of the one-year statute of limitations is not inconsistent with the Rhode Island Supreme Court's holding in *Ward* and effectuates the purposes of both acts.

As indicated above, nearly all of Plaintiff's failure to promote allegations occurred outside the one-year limitations period. In fact, only the promotions of Nick Medeiros and Rick Allen occurred subsequent to November 16, 1999 and prior to November 16, 2000. The remaining allegations fall outside the limitations period,

---

4. In fact, as of the date of this decision the Plaintiff was still employed at the same store she was working at in 1998 when Autozone purchased Auto Palace.

and therefore will not be considered in support of Plaintiff's RICRA claim.

### B. The McDonnell Douglas–Burdine Analysis

#### 1. FEPA

Because FEPA is nearly identical to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Rhode Island Supreme Court has routinely applied the analytical framework developed in federal Title VII cases to actions brought under FEPA. *Center for Behavioral Health, Rhode Island, Inc. v. Barros*, 710 A.2d 680, 685 (R.I.1998); *Newport Shipyard, Inc. v. Rhode Island Comm'n for Human Rights*, 484 A.2d 893, 897–98 (1984). Therefore, the Court will utilize Title VII case law in its analysis of Plaintiff's state law employment discrimination claims.

In a disparate treatment case such as this, the inquiry is whether the defendant intentionally discriminated against the plaintiff. *See Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 106 (1st Cir.1988). When a plaintiff is unable to offer direct proof of her employer's discrimination, which is the case here, the court allocates the burden of producing evidence according to the burden-shifting framework first outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and further explained in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *McDonnell Douglas–Burdine* framework consists of three stages. In the first stage, the plaintiff must set forth a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. In employment discrimination cases, the plaintiff must show that: (1) she is a member of a protected class; (2) her employer took an adverse employment action against [her]; (3) she was qualified for the employment; and (4) her position remained open or was filled by a person whose qualifications were similar to hers. *Rodriguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 19 (1st Cir.1999). In this case, the Plaintiff has arguably met this initial burden. She is a member of a protected class. She has asserted that she has suffered as a result of Autozone's failure to promote her and pay a salary comparable to its male employees. The Plaintiff also at least alleges that she is qualified to perform all of the duties of the job given to her male counterparts. Finally, she has alleged that a number of Autozone employees with qualifications roughly similar to her were promoted to positions that she would have wanted.

Once the plaintiff makes out a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for its adverse employment action." *Straughn*, 250 F.3d at 33 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). With respect to the Plaintiff's failure to promote claims, only two individuals were promoted to ASM positions within the limitations period: Nick Medeiros and Rick Allen.[5] There were no indi-

---

**5.** Autozone provided business-related reasons for all of the employees with whom the Plaintiff took issue, regardless of the time the promotion occurred. Tom Disano had prior automotive experience, and had even owned his own auto parts store. Jose Rios is fluent in Spanish and was promoted to a position in a predominately Spanish-speaking store. Kevin Rooney and Chris Brosco both had prior auto parts experience. In other words, Autozone simply claims that it hired or promoted more qualified and appropriate persons for the job in question. As indicated below, Plaintiff fails to rebut the reasons proffered by Autozone for its decisions. While this Court has found all pre-November 16, 1999 occurrences are time-barred under both FEPA and

viduals promoted to PSM ahead of the Plaintiff during the limitations period.

■ The only allegations in support of the Plaintiff's failure to promote claims that fall within the statute of limitations are those with respect to Mr. Medeiros and Mr. Allen. According to Autozone, Mr. Medeiros was appointed to the ASM position due to his extensive knowledge in automotives and his prior experience as a manager of an auto body shop. In fact, the Plaintiff acknowledged Mr. Medeiros' experience in her own deposition. *See* Deposition of B. Rathbun at 93. Mr. Allen was promoted to ASM because he was qualified as a "parts pro," and had previously worked for another automotive store.

Autozone responded to the unequal pay allegations by providing that rates of pay are determined by a guideline grid created by its corporate headquarters. According to the grid, an employee's rate of pay varies based on the date the individual began his or her employ with Autozone. An individual that begins working at Autozone in 2000 or 2001 is placed in a higher pay grid than an individual who started working for Autozone in 1998. As a result, Plaintiff is paid lower than employees who began working at Autozone after her. While Autozone admits that these guidelines may appear unfair in that they do not reward employee longevity—indeed, they penalize it—it submits that the guidelines are gender neutral. Autozone has met its burden of providing a legitimate explanation for its actions. *See Gu v. Boston Police Dept.*, 312 F.3d 6, 12 (1st Cir.2002).

Because Autozone has advanced legitimate, non-discriminatory reasons for its actions, the burden returns to the Plaintiff, who must advance some evidence to show *both* that her employer's articulated reasons are a pretext *and* that the true reasons are discriminatory. *Straughn*, 250

F.3d at 34. This is commonly referred to as the "pretext plus" approach, in that a plaintiff must show not only that the employer's proffered reason was pretextual, but that discrimination was the actual reason for the action. *Thomas*, 183 F.3d at 40. "The 'same evidence used to show pretext can support a finding of discriminatory animus if it enables a factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action.'" *Straughn*, 250 F.3d at 34 (quoting *Feliciano*, 218 F.3d at 6). Summary judgment may only be granted if the Plaintiff has failed to provide sufficient evidence from which a reasonable jury *could* find that Autozone's claimed reasons for not promoting the Plaintiff and the pay differential were pretextual and the result of discriminatory animus. *Id.*

In an ultimately inadequate effort to satisfy this burden, the Plaintiff refers the Court back to the promotions and rates of pay of her male coworkers. However, Plaintiff fails to provide any new evidence to rebut the superior qualifications of the male employees promoted to positions instead of her. Plaintiff does refer the Court to Mr. Allen's less than stellar employment history following his promotion, however this had no bearing on Autozone's decision to promote Mr. Allen. *See Cullen v. Olin Corp.*, 195 F.3d 317, 324 (7th Cir. 1999), *cert. denied*, 529 U.S. 1020, 120 S.Ct. 1423, 146 L.Ed.2d 315 (2000). Furthermore, the fact that male employees are being paid more than Plaintiff when they have been working at Autozone for a shorter period of time does not rebut Autozone's proffer of its gender neutral salary guidelines. As Autozone noted in its papers, the guidelines also provide for higher rates of pay to women that have started working at Autozone after the Plaintiff. Simply put, the guidelines while

RICRA, plaintiff's failure to rebut extends to these individuals as well.

arguably unfair, treat men and women equally unfairly in their application. They are gender neutral. While Plaintiff may disagree with the wisdom of Autozone's salary structure—one that makes an employee's salary less competitive the longer he or she is employed—this is not an issue that is properly the subject of this litigation. *Rossy v. Roche Prods., Inc.,* 880 F.2d 621, 625 (1st Cir.1989) (noting that it is not the role of the court to second-guess the business decisions of an employer); *see Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir.1997) (holding that judges are not to act as some super-personnel department questioning human resources decisions). Because the Plaintiff has failed to sustain her evidentiary burden to rebut Autozone's proffered nondiscriminatory reasons for its employment actions, summary judgment should be granted.

### 2. RICRA

Given that Plaintiff has failed to provide sufficient, competent evidence in support of her FEPA claim, her cause of action under RICRA also fails. *See Resare v. Raytheon Co.,* 981 F.2d 32, 44 n. 30 (1st Cir.1992) (indicating the argument that a plaintiff's inability to maintain a FEPA claim will preclude an accompanying RICRA claim); *Iacampo v. Hasbro, Inc.,* 929 F.Supp. 562, 573 (D.R.I.1996) (holding that if plaintiff succeeds in proving FEPA allegations, she will also succeed on her RICRA claim).

### IV. *Conclusion*

For the reasons set forth above, Defendant's Motion for Summary Judgment on the remaining counts of Plaintiff's Complaint is GRANTED.

IT IS SO ORDERED.