266 F.Supp.2d 288 (2003)
Michael KRIEGEL, Plaintiff,
v.
STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, and Ashbel T. Wall, in his official capacity as director of Department of Corrections, and Richard Gaskell, in his official capacity as Assistant Administrator of Adult Probation and Parole and in his individual capacity, and Nancy Gentili, in her official capacity as Supervisor of Adult Probation and Parole and in her individual capacity, and Jeffrey Laurie, in his official capacity as Assistant Director of Rehabilitative Services and in his individual capacity, Defendants.
No. 00-284S.
United States District Court, D. Rhode Island.
May 30, 2003.
*292 Richard J. Savage, Savage & Savage, Warwick, RI, for plaintiff.
Thomas A. Palombo, Christine L. Rossi, Esq., State of Rhode Island, Dept. of the Attorney General, Providence, RI, for defendants.

DECISION AND ORDER
SMITH, District Judge.
Plaintiff Michael Kriegel ("Plaintiff or "Kriegel") brings this capability discrimination and First Amendment action against the State of Rhode Island ("State") and several of its officers (collectively with the State, "Defendants") for: (I) violation of the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, et seq.; (II) violation of the Rhode Island Civil Rights of Individuals with Handicaps Act ("RICRIHA"), R.I. Gen. Laws § 42-87-1, et seq.; (Ill) violation of the Rhode Island Civil Rights Act ("RCRA"), R.I. Gen. Laws § 42-112-1, et seq; and (TV) violation of Plaintiffs First Amendment rights, brought by the vehicle of 42 U.S.C. § 1983. Defendants have moved for summsiry judgment on all counts.
For the reasons that follow, this Court grants summary judgment as to Counts I, II, and III, insofar as they set forth claims for disparate treatment and hostile work environment. Summary judgment is denied as to Counts I, II, and III, to the extent they set forth a claim for failure to accommodate. The Court also grants summary judgment as to Plaintiffs Section 1983 claim, Count TV.

I. Facts and Background

Plaintiff Kriegel has worked in the State of Rhode Island's Probation and Parole department (the "Department") since December 7, 1977. He began as a Juvenile Counselor, but after an incident with an inmate in which Kriegel sustained an injury, he spent ten years on workers' compensation. On June 10, 1988, Kriegel was appointed to the position of Probation and Parole Counselor II. Since then, he has taken medical leaves of absence, every year, from 1989 through 2002. In April 1997, Kriegel returned to work after one such absence with a note from his doctor stating that he could resume his duties. Shortly thereafter, however, he was placed on administrative leave with pay following a confrontation with a colleague and an ensuing disciplinary hearing. This leave lasted from August to November of 1997. After his return, he was the subject of another disciplinary hearing in February 1998 and was again placed on medical leave. He has not worked in the Department for the five-plus years since.
It appears from the record that Kriegel has both ophthalmologic ("tarditive dystonia and bletherospasm [sic]")[1] and psychiatric *293 maladies. See First Amended Complaint, ¶19. On September 22, 1997, Kriegel applied for an accommodation under the Rhode Island Civil Rights Act, seeking relief from his obligation to perform "courtroom coverage," which application was denied by the State based on management's view that courtroom coverage was an essential duty of a Parole and Probation counselor. Kriegel appealed this decision to the Office of Rehabilitation Services, which affirmed the denial. After this denial, Defendants claim that Kriegel was found to be insubordinate to his supervisor and derelict in his duties, all of which Kriegel disputes. A hearing on these charges was held and resulted in Kriegel's suspension for three days.[2]
Kriegel filed a discrimination complaint with the Rhode Island Commission for Human Rights ("RICHR") on August 5, 1998, alleging disparate treatment by the State and the State's maintenance of a hostile work environment. The RICHR issued a Notice of Right to Sue on October 18, 1999 and Kriegel filed a Complaint in Rhode Island State Superior Court on January 14, 2000. When Plaintiff amended his Complaint to include a violation of his First Amendment rights, Defendants removed the case to this Court.
Plaintiff claims that he was threatened with discipline based on the State's dissatisfaction with his bail and probation recommendations. He also claims, as the basis for his disparate treatment and hostile work environment disability discrimination claims, that (1) from 1995 through 1998 he was prevented from using the back entrance to the building in which he worked, while others were not so prevented; (2) in 1997, his work was monitored by Defendant Nancy Gentili, his immediate supervisor at that time, while others' work was not monitored; (3) in 1997, Ms. Gentili created a hostile work environment for him by falsely criticizing his work and ignoring him; (4) he was harassed and taunted continually by his co-workers; (5) he was accused falsely of creating a hostile work environment; (6) he was accused of sleeping on the job; (7) he was given a disproportionate number of "restitution" claims; (8) he was intentionally "confused" by Defendants; and (9) no one trained him to use the Department computer upon his return from sick leave in 1997, thereby hindering his job performance.
Plaintiff further asserts, in support of his claim of failure to accommodate, that he has difficulty fulfilling his duties in Courtrooms C and D of the Garrahy Building in Providence, Rhode Island, because those two courtrooms require rapid eye scanning. It appears that there are two other courtrooms, A and B, that would be easier for him to cover. He alleges that coverage of Courtrooms C and D normally constitutes a fraction of his regular duties (one or two days per month) and that he would be available for coverage of the other two courtrooms (or for performance of other job functions) during those periods. He claims that this modified work schedule was a reasonable accommodation request which the State denied.
Plaintiff also claims that throughout his employment as a counselor for the Department, he has exercised his First Amendment rights by stating publicly his concerns about the Department. Apparently, Plaintiff has expressed his views on local radio talk shows that there are problems *294 in the Department, and contacted a state legislator about his concerns. He claims that the disciplinary problems he has encountered are in retaliation for these public statements.

II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to summary judgment
if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, this Court must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002); Mesnick v. General Electric Co., 950 F.2d 816, 820 (1st Cir. 1991); Griggs-Ryan v. Smith, 904 F.2d 112,115 (1st Cir.1990).
To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, the evidence presented by the nonmoving party "`cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial'" Mesnick, 950 F.2d at 822 (citing Mack v. Great Ail. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). In order to defeat a properly supported motion for summary judgment, therefore, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Natl Bank of Boston, 985 F.2d 1113, 1116 (1st Cir.1993) (citing Anderson, 477 U.S. at 249, 106 S.Ct. 2505).

III. Analysis

1. Statutes of Limitations Applicable to Kriegel's FEPA RICRA and RICRIHA Claims

Although the Defendants do not specifically flag the issue, it is clear to this writer that there are threshold statute of limitations issues that must be confronted before turning to Plaintiffs laundry list of perceived slights and offenses. In order to assess the legal adequacy of Plaintiffs claims the Court must first determine which undisputed facts are timely asserted under the applicable statutes.

a. FEPA

FEPA provides that an aggrieved individual must bring a charge with the RICHR within one year of the allegedly unlawful employment practice. R.I. Gen. Laws § 28-5-17. Allegedly unlawful employment practices outside that time period may not be considered. In this case, Plaintiff filed his charge with the RICHR on August 5, 1998. Consequently, only those acts that occurred subsequent to August 5, 1997 fall within the relevant time period for purposes of reviewing Plaintiffs FEPA unequal treatment, hostile work environment, and failure to accommodate claims.

b. RICRA

RICRA does not itself set forth a statute of limitations. However, this writer *295 as well as Judge Lagueux of this district both have recently held that when a plaintiff brings both FEPA and RICRA claims that are founded in identical factual allegations, a one-year statute of limitations will apply to both claims. See Rathbun v. Autozone, Inc., 253 F.Supp.2d 226, 231-32 (D.R.I.2003); Place v. California Webbing Indus., Inc., 249 F.Supp.2d 157, 162 (D.R.I.2003). For the reasons detailed at length in those two decisions, the Court applies a one-year statute of Umitations to Kriegel's RICRA claims, and will consider only those allegations that post-date August 5, 1997 in its assessment of those claims.

c. RICRIHA

RICRIHA likewise does not provide a statute of limitations and no court has addressed this issue to date. Of some assistance, however, are the following provisions:
Civil liability.(a) Any person with a disability who is the victim of discrimination... may bring an action in the Superior Court against the person or entity causing the discrimination for equitable relief, compensatory and/or punitive damages....
(b) No person with a disability whose action for discrimination is otherwise within the jurisdiction of the commission for human rights under chapter 5 of title 28 ... may bring an action under this section, unless the commission for human rights has failed to act upon that person's complaint within sixty (60) days of filing, or the commission has issued a final order on the complaint.
R.I. Gen. Laws § 42-87-4(a), (b). These sections plainly betoken the Rhode Island General Assembly's intent to extend the procedural administrative requirements of FEPA to RICRIHA: with certain limited exceptions, a putative plaintiff is prohibited from bringing a RICRIHA claim if his claim is also within the bailiwick of the RICHR pursuant to FEPA. This conclusion is further buttressed by the crucial role the RICHR plays in enforcing the provisions of RICRIHA, and the legislature's explicit reference to § 28-5-17, FEPA's statute of limitations, within RICRIHA's text:
(a) Except as specifically set forth in subsections (b) and (c),[3] the Rhode Island commission for human rights is empowered and directed to prevent any person from violating any of the provisions of §§ 42-87-1^2-87-4, provided that before instituting a formal hearing it shall attempt by informal methods of conference, persuasion, and conciliation, to induce compliance with those sections. Upon the commission's own initiative or whenever an aggrieved individual ... makes a charge to the commission that any person, agency, bureau, corporation or association ... has violated or is violating any of the provisions of §§ 42-87-1-42-87-4, the commission may proceed in the same manner and with the same powers as provided in §§ 28-5-16-28-5-26, and the provisions of §§ 28-5-13 and 28-5-16-28-5-36, as to the powers, duties and rights of the commission, its members, hearing examiners, the complainant, respondent, interviewer, and the court shall apply in any proceedings under this section.

R.I. Gen. Laws § 42-87-5(a) (emphasis supplied). Thus, it is clear that the legislature intended that FEPA's administrative bulwark, including its one-year statute *296 of limitations, should also apply in actions brought under RICRIHA. The statutory constructions and policy reasons which support this reading are as strong here as they are in RICRA, and this writer sets these forth at some length in Rathbun, supra. These underpinnings will not be repeated here, but suffice it to say that importation of any limitation period other than one year would defeat the goal of timely consideration of complaints of discrimination, and render the one-year limitation period in FEPA meaningless as to claims of disability discrimination. This Court will consequently consider only those allegations that post-date August 5, 1997 in evaluating Kriegel's RICRIHA claims.

2. The Disability Discrimination Claims

Plaintiffs disability discrimination claims (failure to accommodate, disparate treatment, and hostile work environment) are all filed in triplicate: under FEPA, RICRIHA, and RICRA. Irrespective of which statutory horse he rides, Kriegel must traverse the disability discrimination trail, whose contours are best understood by reference to the analysis utilized in the corresponding federal statute, the Americans with Disabilities Act of 1990 ("ADA").[4]See Tardie v. Rehabilitation Hosp. of Rhode Island, 6 F.Supp.2d 125, 132-33 (D.R.I.1998) (if summary judgment is granted as to the ADA claim, it should also be granted as to FEPA and RICIHA claims), aff'd, 168 F.3d 538 (1st Cir. 1999), (citing Hodgens v. General Dynamics Corp., 963 F.Supp. 102, 104 (D.R.I. 1997) (all other citations omitted)).
Liability attaches under the ADA if a
qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity.
42 U.S.C. § 12132. Having set forth the basic ADA praxis, the Court will examine each of Kriegel's three substantial disability discrimination claims in closer detail.

a. Failure to Accommodate

The United States Supreme Court recently outlined the proof requirements in a failure to accommodate case brought under the ADA:
First, the ADA says that an employer may not "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a). Second, the ADA says that a "qualified" individual includes "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the relevant "employment position." § 12111(8) (emphasis added). Third, the ADA says that "discrimination" includes an employer's "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified ... employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." § 12112(b)(5)(A) (emphasis add *297 ed). Fourth, the ADA says that the term "`reasonable accommodation' may include ... reassignment to a vacant position." § 12111(9)(B).
US Airways, Inc. v. Barnett, 535 U.S. 391, 396, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).[5] A "reasonable accommodation" may include
(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
42 U.S.C. § 12111(9).
Thus, applying the language of RICRIHA, and using the ADA as a guide, the Plaintiff must prove the following in order to recover under a failure to accommodate theory: (1) that he is a person with a disability; (2) that he was nevertheless able to perform the essential functions of his job with reasonable accommodation, and at no "major cost" to his employer;[6] and (3) that Defendants, despite knowing of his alleged disability, did not reasonably accommodate it. See Carroll v. Xerox Corp., 294 F.3d 231, 237-38 (1st Cir.2002) (citing Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999)).[7]
Defendants concede that Kriegel is disabled within the meaning of the FEPA, *298 RICRA and RICRIHA,[8] and focus their attention exclusively on the "essential function" defense: they contend that the Department was justified in denying Kriegel's requested accommodation because the accommodation "relate[s] to the essential functions of [his] position." Memorandum in Support of Summary Judgment ("Def.Mem.") at 14. Defendants' statements imply a fundamental misunderstanding of the concept of reasonable accommodation. The fact that a requested accommodation goes to an essential function of the job does not make it unreasonable. In order to determine whether or not the requested accommodation is unreasonable, the employer must consider factors such as cost, inconvenience to other staff, disruption of operations and the like.
It is also possible that the Defendants are arguing that Kriegel is not a "qualified employee" because his disabilities, even "with reasonable accommodation," prevent him from fulfilling "the essential functions" of the position of Parole and Probation Counselor. An essential function is a "fundamental job dut[y]" of the employment position that the individual with a disability holds or desires. Laurin v. Providence Hosp., 150 F.3d 52, 56-57 (1st Cir.1998). The term does not include "marginal functions of the position," but at the same time it "may be more encompassing than such core job requirements as an employee's technical skills and experience even including such individual or idiosyncratic characteristics as scheduling flexibility." Id. at 57, 59 n. 6 (internal citations omitted).
However one reads the Defendants' argument, Plaintiff has proffered evidence that coverage of Courtrooms C and D is, arguably, a "marginal function" of his job as a Parole and Probation Counselor:
One of my duties is to cover Courtrooms C and D in the Garrahy Building. I have difficulty covering these courtrooms because it requires rapid eye scanning. There are two other courtrooms to cover. We rotate coverage of the four courtrooms, covering one of the courtrooms one day a week. Therefore, in a four week period I would cover C one time and D one time.
Pl.'s Ex. 7, Kriegel Aff., ¶ 6. It is uncontested that Defendants knew about Kriegel's visual impairments, but denied his request for an accommodation nevertheless. Lastly, it is clear that the Defendants' denial of the requested accommodation affected the conditions of Kriegel's employment. Plaintiff has therefore sufficiently made out a failure to accommodate claim. See Higgins, 194 F.3d at 265 ("Here, the appellant's failure-to-accommodate claim satisfied these three rather *299 undemanding requirements: his affidavit stated, in substance, that he had a hearing impairment, that [appellee] knew of it, and that management nonetheless failed to accommodate him....").
Moreover, the record is bereft of any evidence demonstrating that Defendants attempted to provide Kriegel with any accommodation: they simply denied the request and averred in conclusory fashion that coverage of Courtrooms C and D is an essential function of the position of Parole and Probation Counselor.[9]See Def. Mem., Ex. B. Therefore, there is a factual dispute as to whether Kriegel's accommodation request was reasonable, and, conversely, whether the Defendants' denial of this request was not. Summary judgment is therefore not appropriate as to Kriegel's failure to accommodate claim.[10]

b. Disparate Treatment

To recover under a disparate treatment theory pursuant to the ADA, Kriegel must show (1) that he suffers from a disability; (2) that he was nevertheless able to perform the essential functions of his job, with reasonable accommodation;[11] and (3) that Defendants took an adverse employment action against him because of, in whole or in part, his protected disability. Carroll, 294 F.3d at 237 (citing Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir.1999)).
The critical element here is the intent to discriminate. Plaintiff offers no direct evidence of Defendants' discriminatory animus. Thus, as in all such cases, "[i]n order to facilitate inquiries into whether an employer's adverse employment decision was motivated by an employee's disability, courts generally use the McDonnell Douglas burden-shifting scheme."[12]Higgins, 194 F.3d at 264. The basic framework of the McDonnell Douglas analysis is well known:
[A] plaintiff who suffers from a disability makes out a prima facie case of employment discrimination by demonstrating that she is a member of a protected group who has been denied an employment opportunity for which she was otherwise qualified. Such a showing gives rise to an inference that the employer discriminated due to the plaintiff *300 disability and places upon the employer the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment decision. This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the plaintiffs at all times. Once such a reason emerges, the inference raised by the prima facie case dissolves and the plaintiff is required to show ... that the employer's proffered reason is a pretext for discrimination.
Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir.1998) (internal citations and footnote omitted).
Recalling the discussion supra at l(a-c), the allegations supporting the disparate treatment claim must fall between August 5, 1997 through August 5,1998, the date Plaintiff filed his charge with the RICHR.[13] Plaintiff's evidentiary proffer is remarkably weak: other than various amorphous claims, not tied to any specific period of time, about general discord with his supervisors and co-workers, he points to a single incident shortly after his return to work in November 1997 from medical leave as evidence of discrimination. He claims that he had a confrontation with a female co-worker and that he was disciplined inequitably, in that Defendants "never requested my version of the events." Pl.'s Ex. 7, Kriegel Aff, 1114. This hardly suffices to meet the prima facie showing contemplated by McDonnell Douglas. Plaintiff was the subject of numerous disciplinary problems and at least two disciplinary proceedings for belligerent and otherwise inappropriate workplace behavior. As the First Circuit has stated in the context of a retaliatory discharge claim:
[W]hen an employer warns an employee that certain work-related behavior, not itself protected tinder the law, will be deemed inimical to the proper functioning of the shop, and the employee disregards the warning, the employer cannot be sued for retaliation simply because it then does what it warned it would do.
Higgins, 194 F.3d at; 263-63.
Even if the Court assumes, arguendo, that Plaintiff has made out the prima facie case, Defendants have easily met their burden of articulating a legitimate, non-discriminatory reason for disciplining Kriegel: to wit, the maintenance of "appropriate behavior in the workplace." Def. Mem., at 15. The burden then shifts back to Plaintiff to demonstrate that the Defendants' stated reason is pretextuala cloak to disguise Defendants' true discriminatory motive. See Dichner, 141 F.3d at 30. Here, Plaintiffs claim completely unspools. Plaintiff offers not a thread of evidence to show that Defendants' decision to discipline him was pretextual, or that the true motivation for the discipline was discriminatory. Summary judgment is therefore appropriate as to this claim.

c. Hostile Work Environment

The First Circuit has assumed, without yet deciding, that hostile work environment claims may be brought pursuant to the ADA. See Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 23 (1st Cir.2001). This Court will assume further that such a claim is cognizable under the three statutes invoked by Plaintiff, FEPA, RICRA and RICRIHA. Following the analytic framework set forth *301 above to make out such a claim, a plaintiff must establish that: (1) he is disabled; (2) he was subjected to unwelcome harassment; (3) the harassment was based on disability; (4) the harassment was sufficiently severe to alter conditions of his employment and create an abusive working environment; (5) the conduct in question both offended the plaintiff and would offend a reasonable person; and (6) some factual basis exists to impute liability to the employer. See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).
As in his disparate treatment claim, Plaintiff falters in his attempt to demonstrate the employer's discriminatory motive (the third step of the framework set forth above)i.e., that during the period from August 5, 1997 through August 5, 1998, Defendants harassed him because of his disabilityand he falls completely at steps four through six. Kriegel refers back to his disciplinary difficulties and the attendant proceedings, as well as to continuing problems with his supervisor at the time, Ms. Gentili. His inchoate expressions of discontent fall far short of establishing a factual basis to support a claim of harassment on the basis of disability. Summary judgment must therefore enter as to this claim.[14]

3. The First Amendment Claim
Plaintiff also asserts that "Defendants have taken adverse employment actions against him because he has exercised his First Amendment rights." Plaintiffs Memorandum in Opposition to Defendants' Motion for Summary Judgment, ("PI. Mem."), at 13. Plaintiff alleges that these adverse employment actions include: (1) placing Kriegel on leave in August of 1997; (2) later suspending him; and (3) forcing him to go on numerous medical leaves, all allegedly in retaliation for his expression of his views regarding the Department on a radio program.
The First Circuit has outlined a threestep scheme to analyze a cause of action for violation of the First Amendment in the context of an adverse employment action. See Tang v. R.I. Dept. of Elderly Affairs, 163 F.3d 7,12 (1st Cir.1998).
First, a plaintiff must make a statement as a citizen upon matters of public concern. If the speech involves matters not of public concern, but instead of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Id.
Second, the court weighs the strength of the employee's and the public's First Amendment interests against the government's interest in the efficient performance of the workplace. Id.
Third, if the employee's and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the employee's speech, the plaintiff must show that the protected expression was a substantia] or motivating factor in an adverse employment action. Id.
*302 Kriegel's First Amendment claim collapses at the third step.[15] The purpose of the third step of the test is to ensure that the employee is not placed
in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing.... A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.
Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-^86, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); see O'Connor, 994 F.2d at 917 (in context of a summary judgment motion, "[u]nless [plaintiff] can present evidence demonstrating that the discharge was motivated by his protected speech, [defendant will] be entitled to judgment under the Mt. Healthy test").
Kriegel has failed to proffer any evidence connecting his public statements with the Defendants' adverse employment actions. In fact, he has failed to submit anything to suggest that Defendants even knew about his public statements at the time they took the employment decisions of which Kriegel complains. At oral argument, in response to the Court's request that he identify any connection between Kriegel's public comments and the Defendants' employment actions, counsel for Plaintiff directed the Court to Plaintiffs Exhibit 4, at p. 35, which is a portion of the deposition of Defendant Jeffrey Laurie:
A. That's what I'm recommending, a three-day suspension [for Kriegel].
....
Q. Are you aware that Mr. Kriegel has been critical of the Department of Corrections and specifically probation and parole?
A. Yes.
Q. Are you aware that Mr. Kriegel sought the assistance of Representative Heffner?
A. Yes.
Pi's. Ex. 4.
At most, however, this testimony indicates that Laurie came to know about Kriegel's public comments at some point, not necessarily before making the decision to suspend him for his misconduct. This evidence in no way demonstrates the necessary causal link between the protected speech and the adverse employment action. Since Plaintiff has not offered the Court any other nexus, Kriegel's First Amendment claim cannot survive summary judgment. See Rochester Ford, 287 F.3d at 38 (party moving for summary judgment discharges his burden by showing that there is an absence of evidence to support non-moving party's case); Kelly v. U.S., 924 F.2d 355, 357 (1st Cir.1991) *303 ("Proof based on arrant speculation, optimistic surmise or farfetched inference will not suffice" to defeat a properly supported motion for summary judgment) (emphasis supplied).

IV. Conclusion

For the foregoing reasons, the Court orders as follows:
1. Summary judgment is GRANTED as to Counts I, II, and III, insofar as they set forth claims for disability discrimination based on theories of disparate treatment and hostile work environment;
2. Summary judgment is DENIED as to Counts I, II, and III, insofar as they set forth claims for disability discrimination based on a theory of failure to accommodate; and
3. Summary judgment is GRANTED as to Count IV.
IT IS SO ORDERED,
NOTES
[1] Stedman's Medical Dictionary (27th ed.2000) defines dystonia as "[a] state of abnormal tonicity [itself defined as "[a] state of normal tension of the tissues by virtue of which the muscles are kept in shape, alert, and ready to function ...."] in any of the tissues resulting in impairment of voluntary movement." Id. at 557, 1843. Blepharospasm is "[i]nvoluntary, spasmodic contraction of the orbicularis oculi muscle[, which] may occur in isolation or in conjunction with other dystonic contractions..." Id. at 213.
[2] From the undisputed record, it appears that this discipline was not grieved or arbitrated by Kriegel and/or his Union.
[3] Subsections (b) and (c) deal with complaints relating to, respectively, the physical inaccessibility of buildings and elementary and secondary education. See R.I. Gen. Laws § 42-87-5(b), (c).
[4] Although he amended the Complaint to include a federal First Amendment cause of action, Plaintiff elected not to include a cause of action for violation of the ADA. This is perhaps understandable given the recent holding of the United States Supreme Court that state employees may not recover money damages from the state because of the state's alleged failure to comply with Title I of the ADA. Board of Trusties of the Univ. of Alabama v. Garrett, 531 U.S. 356, 360, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).
[5] RICRIHA sets forth Rhode Island's analogue, which differs somewhat from its ADA counterpart:

[N]o otherwise qualified person with a disability shall, solely on the basis of disability, who with reasonable accommodation and with no major cost can perform the essential functions of the job in question, be subjected to discrimination in employment by any person or entity ... doing business within the state.
R.I. Gen. Laws § 42-87-3(2). Although RICRIHA protects disabled employees who can perform the essential functions of the job "with reasonable accommodation" (as opposed to the ADA's protection of disabled employees "with or without reasonable accommodation"), this distinction is likely meaningless and the result of inartful drafting. It is hard to imagine that the Rhode Island General Assembly meant to exclude from protection otherwise qualified individuals with a disability who are able to perform the essential functions of the job without accommodation. In any event the distinction is not material in this case given the Court's disposition of the claims.
[6] The "no major cost" component would appear to be another way of saying that a requested accommodation must not be "unreasonable." This may be just another inartfully drafted provision, or, it may indicate the General Assembly's desire to exclude from coverage accommodations that would be highly costly, regardless of the employer's ability to bear the burden and the reasonableness of such a cost. Again, this Court need not reach this issue.
[7] The Higgins court offered the following helpful explanation:

Unlike other enumerated constructions of "discriminate," this construction does not require that an employer's action be motivated by a discriminatory animus directed at the disability. Rather, any failure to provide reasonable accommodations for a disability is necessarily "because of a disability"the accommodations are only deemed reasonable (and, thus, required) if they are needed because of the disability and no proof of a particularized discriminatory animus is exigible. Hence, an employer who knows of a disability yet fails to make reasonable accommodations violates the statute, no matter what its intent, unless it can show that the proposed accommodations would create undue hardship for its business.
194 F.3d at 264 (internal citations omitted).
[8] In fact, Defendants have gone so far as to admit in their pleadings that Plaintiff's "conditions are disabilities within the meaning of" FEPA, RICRA and RICRIHA. Answer to First Amended Complaint, ¶ 70. The reasons for this admission are inexplicable. The Supreme Court has established a highly rigorous standard for qualifying as "disabled" under subsection (A) of § 12111(8). See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (setting forth detailed requirements and noting that "[m]erely having an impairment does not make one disabled for purposes of the ADA"). It is by no means clear that the Plaintiff would meet this rigorous standard based on the information contained in the record. Why the State would concede the point is dumbfounding to this writer. Because of Defendants' admission, however, for purposes of this Motion the Court must assume that Kriegel meets the ADA's definition of disability. Moreover, if Plaintiff is to be held to his proof under Toyota at trial, Defendants will have to move the Court to amend their Answer pursuant to Fed.R.Civ.P. 15(a). The Court takes no position on whether such a motion would be appropriate, or what the outcome of such a motion would be.
[9] At oral argument, Defendants' counsel suggested somewhat vaguely that Kriegel had been offered "another job," though she did not know what the job was. Kriegel rejected this offer, and no further negotiations ensued. It is possible that this offer could satisfy the burden reasonably to accommodate. Defendants are, of course, not bound to the requested accommodation, but may offer an alternative, so long as it is reasonable. Plaintiff's refusal of such an offer would preclude him from recovery. But, again, the State has failed to pursue this argument.
[10] Kriegel also requested (albeit informally) that he be permitted to wear sunglasses in court. Defendants denied this request "based upon the belief that it would not correct the eye problem." Def. Mem., at 4. This issue, however, is not properly before the Court because it was not pled in the First Amended Complaint.
[11] Again, although RICRIHA offers a slightly different standard, see supra at n. 5, the distinction is not material to the Court's rulings on the viability of this claim.
[12] Because FEPA is nearly identical to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., the Rhode Island Supreme Court has routinely applied the analytical framework developed in federal Title VII cases to actions brought under FEPA. Center for Behavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680, 685 (R.I. 1998); Newport Shipyard, Inc. v. Rhode Island Comm'n for Human Rights, 484 A.2d 893, 897-98 (1984). Therefore, the Court will utilize Title VII case law in its analysis of Plaintiff's state law employment discrimination claims.
[13] Plaintiff has not invoked the exception to the RICHR's administrative requirements for violations "of a continuing nature." See, e.g., Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 868 (1st Cir.1997) (citing Kassaye v. Bryant College, 999 F.2d 603, 606 (1st Cir. 1993)).
[14] Because Plaintiff has failed to provide sufficient and RICRIHA-based competent evidence in support of his FEPA-based claims of disparate treatment and hostile work environment, his RICRA-based claims for disparate treatment and hostile work environment also fail. See Resare v. Raytheon Co., 981 F.2d 32, 44 n. 30 (1st Cir.1992) (indicating that a plaintiff's inability to maintain a FEPA claim will preclude an accompanying RICRA claim); Iacampo v. Hasbro, Inc., 929 F.Supp. 562, 573 (D.R.I.1996) (holding that if plaintiff succeeds in proving FEPA allegations, she will also succeed on her RICRA claim).
[15] This is not to say that his claim might not also founder at step one, but for purposes of this motion the Court will give him the benefit of the doubt. Kriegel's public observations about the Department are likely not the stuff of "inherent public concern."See, e.g., Faerberv. City of Newport, 51 F.Supp.2d 115, 121 (D.R.I. 1999); O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir.1993) (fire chief's public commentary on available fire protection is a matter of inherent concern). Moreover, only certain matters that transpire within a government office are of public concern, and not every criticism directed at a public official sows the seed of a constitutional case. Connick v. Myers, 461 U.S. 138, 149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Plaintiff has advanced little, if any, evidence of the nature of Kriegel's radio pronouncements or the reasons for the public's interest in them.